IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| KENNETH R. FERGUSON, | ) |
| | ) |
| Plaintiff-Counterdefendant, | ) CASE NO.  CV 03-151-S-MHW |
| | ) |
| v. | ) |
| | ) **MEMORANDUM DECISION** |
| GALE INDUSTRIES, INC., a Florida | ) **AND ORDER** |
| corporation, now known as MASCO | ) |
| CONTRACTOR SERVICES | ) |
| CENTRAL, INC., | ) |
| | ) |
| Defendant-Counterclaimant. | ) |
| _____ | ) |

**INTRODUCTION.**

Currently pending before the Court are Defendant-Counterclaimant's motion for

summary judgment (docket # 31) filed on October 29, 2004, and Plaintiff-Counterdefendant's

motion for summary judgment (docket # 36) filed November 1, 2004.   Defendant-

Counterclaimant  has also filed a motion to strike the affidavit of Reisse Perin (docket # 44) filed

December 9, 2004.

**I.**
**Background.**

This litigation arises from a Stock Purchase Agreement ("Agreement") entered into by

Plaintiff-Counterdefendant Kenneth R. Ferguson ("Ferguson") and Defendant-Counterclaimant

**Memorandum Decision and Order - Page 1**

Gale Industries, Inc. ("Gale").[1]   For a number of years, Ferguson was the sole shareholder and owner of Intermountain West Insulation, Inc. ("Intermountain"), a general insulation contractor in the Boise,  Idaho area.  In the spring of 1999, Gale approached Ferguson about purchasing Intermountain through a stock purchase agreement where Gale would buy all of Ferguson's stock.  While these discussions were underway, Intermountain continued installing insulation in residences and businesses.   In May, 1999,  Intermountain installed ceiling insulation in a business known as New Horizon Day Care and this proved to be the genesis of the dispute that was to occur several months later, after Ferguson has sold his business to Gale.

After a period of due diligence by Gale, the parties entered into the Agreement on June 22, 1999, where Gale agreed to pay Ferguson more than $3 million  for all of his shares of stock in Intermountain.  The Agreement provided, at ¶ 3.4, that the purchase price would have "a value when paid of $3,045,000" and was made up of three components: 1) $2,147,500 to be paid at closing; 2) $510,043 to be paid in accordance with the terms of a promissory note; and 3) "an amount equal to the Net Worth Adjustment," which was to be calculated at a future date according to a formula set out in the Agreement.  Ferguson was additionally to be paid "Contingent Goodwill Amounts" of the greater of either $233,772 or 3% of the collected sales for three years following the closing date.

In July, 1999, Gale canceled the insurance coverage that Ferguson had earlier obtained for Intermountain while he owned the company and placed Intermountain's insurance coverage within Gale's insurance programs.  On August 12, 1999, a fire occurred at New Horizon Day

---

[1]     Gale Industries was an Florida corporation with its principal place of business in Daytona Beach, Florida.  It was a subsidiary corporation of Masco Corporation, a Michigan corporation.  In 2001, Gale Industries' name was changed to Masco Contractor Services Central, Inc.

**Memorandum Decision and Order - Page 2**

Care.  The initial investigation done by the Boise Fire Department and New Horizon laid the blame for the fire on the insulation work that Intermountain had done in May, 1999, while Ferguson still owned the company and prior to the sale to Gale.

The insurance policy that Gale had in place at the time the fire occurred covered the claim made by New Horizon Day Care because the fire occurred during the policy period.  The policy was issued by Legion Insurance Company with a coverage of $5 million dollars.  The policy was a "fronting" policy only, which meant that the premium paid for the insurance would equal the amount of any payments made under the policy.  For example if the insurance company had to pay $500,000 to settle the New Horizon claim, Gale had to pay this same amount to the insurance company as the policy premium.  Therefore Gale had an incentive to make sure claims settled for the lowest amount possible or, as in this case, to contend that someone else was responsible for the fire damage and have them pay the claim.  In this instance, that someone else was Ferguson.

On December 9, 1999, Gale sent a letter to Ferguson demanding the Ferguson defend and resolve the New Horizon fire claim.  Gale asserted that their Agreement required such a result.  Gale pointed to Article 4 of the Agreement, at ¶ 4.1, where Ferguson agreed to indemnify, defend, and hold harmless Gale with respect to any claim relating to any work Intermountain had done prior to closing.  Gale also contended that ¶ 4.4 of the Agreement provided that, in addition to any other available remedies, Gale had the right to withhold amounts payable to Ferguson under the Agreement or offset the amount of the New Horizon claim.

**Memorandum Decision and Order - Page 3**

Ferguson refused the tender.  Gale responded by withholding the future payments due to Ferguson under the terms of the Agreement.  New Horizon ended up filing suit against both Gale and Ferguson in state court.  Ferguson ultimately agreed to defend and settled the suit for $210,000, which Gale paid out of the payments that it had withheld from Ferguson.

## II.
### Standard of Review.

Motions for summary judgment are governed by Fed. R. Civ. P. 56.  Rule 56, which provides in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he/she will bear the burden of proof at trial.  *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986).  If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323. *See also* Rule 56(e).

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth

at trial,"*Hahn v. Sargent*, 523 F.2d 461, 463 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co., Inc.,* 391 U.S. 253, 289 (1968)), *cert. denied,* 425 U.S. 904, 96 S. Ct. 1495, 47 L.Ed.2d 754 (1976), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986).   The Ninth Circuit cases are in accord.  *See British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

### III.
### Analysis.

The claims between the parties have been  parsed down from the original claims in the Complaint and Counterclaim.[2]  Some of the parties' arguments present  true cross motions for summary judgment because the parties respective claims in the Complaint and Counterclaim meet head-to-head.   The Court will analyze these first.

**A.      Breach of contract claims relating to indemnity.**

Ferguson seeks summary judgment on the breach of contract claim contained in Count I of the complaint.  While summary judgment is not sought by Ferguson on the declaratory action contained in Count VIII, it seeks the same relief, requesting that the Court determine that Ferguson did not have a duty to defend and indemnify Gale on the claim bought by Intermountain.   Gale seeks summary judgment in Count One of the Counterclaim requesting that the Court find as a matter of law that Ferguson breached the Agreement when he refused to

---

[2]        Ferguson has agreed to dismiss Counts III, VI, and VII of the Complaint.  In addition Ferguson has agreed not to pursue Counts IV as it relates to the allegation that Gale failed to obtain a non-compete agreement from Intermountain West's sale manager, Marv Ward.  Also Ferguson  will not pursue the portion of  Count V as it relates to any alleged misrepresentation that Gale would obtain a non-compete agreement from Marv Ward.

**Memorandum Decision and Order - Page 5**

defend and indemnify Gale on the claims brought by Intermountain.  Based on the following analysis, the Court finds that Gale is entitled to summary judgment on Count One of its Counterclaim, and Ferguson's motion for summary judgment on Count I and ostensibly on Count VIII will be denied.

As mention earlier, when Gale received notice of New Horizon's claim, it tendered the claim to Ferguson under ¶ 4.1 of the Agreement and Ferguson initially refused the tender.  As a result, Gale withheld future payments it was to make to Ferguson under ¶ 4.4 of the Agreement. New Horizon later filed suit against Intermountain and Gale, and Ferguson agreed to defend the suit, but continued to deny any obligation for the claim and reserved his right to challenge ¶ 4.4 of the Agreement until after the New Horizon litigation was resolved.  Ferguson ultimately settled the New Horizon case for $210,000, which Gale funded from payments it had withheld from Ferguson.

Part of Ferguson's argument is based on proposition that he was not required to indemnify and defend for any claims brought against Intermountain after he sold all of his stock to Gale because Intermountain was not one of the entities mentioned in the Agreement that he was required to indemnify.  The Agreement, at ¶ 4.1, provides in part:

> Without limiting any other rights or remedies available to Gale, the Stockholder [Ferguson] shall indemnify, defend and hold harmless Gale, Masco Corporation and their respective **affiliates** . . . from, against and with respect to any claim, . . . of any kind or character . . . arising out of . . . or attributable to (I) any . . . breach of any warranty of the Stockholder contained in this Agreement . . ..

*Id.* (emphasis added).  Before discussing Ferguson's "affiliate" argument, it is important to note what warranties Ferguson did make in the Agreement.  Certain representations and warranties

were made by Ferguson to Gale in the Agreement.  In ¶ 1.20, Ferguson made the representation
and warranted to Gale that:

> [N]o litigation . . . is now pending or threatened, no claim which has not ripened
> into litigation . . . has been made . . . and **there will be no such claim . . .** or
> litigation **arising out of or relating to any facts, . . . or conditions existing at
> any time . . . prior to the Closing,** in each case whether or not covered by
> insurance. . . .  The Company [Intermountain] has no liability, and will not have
> any liability following the Closing . . . on account of (I) . . . services . . . provided
> or performed by or on half of the Company prior to closing . . . .

*Id.* (emphasis added).  There is no dispute between the parties that New Horizon's claim arose
from *alleged* negligent installation of insulation by Ferguson's employees and that the work was
done when Ferguson owned the company.

The Agreement provides that it is to be interpreted using Florida law.  As is Idaho,
Florida law provides that construction of a contract is a question of law for the court  where the
language is clear, unambiguous, and susceptible to only one interpretation.  *See Mariner Cay
Prop. Owners Ass'n v. Topside Marina, Inc.,* 714 So.2d 1130,  1131 (Fla. Dist. Ct. App. 1998).
Contracts should also be interpreted in a rational manner consistent with reason and probability.
*See Am. Med. Int'l v. Scheller,* 462 So.2d 1, 7 (Fla. Dist. Ct. App. 1984) ("A true ambiguity does
not exist merely because a contract can possibly be interpreted in more than one manner.
Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible.
It is the duty of the trial court to prevent such interpretations.")

Ferguson's argument that he never intended to indemnify Gale for any claims brought
against Intermountain for work that had been done prior to the sale would lead to an "absurd
interpretation" of the plain language of the Agreement.  Ferguson was selling his business for
over $3 million dollars and it is reasonable for Gale to require Ferguson to warrant that there

would be no claims coming down the road after Gale purchased the business which they would then have to pay.  For Ferguson to argue that he was only agreeing to indemnify Gale and Masco Corporation and not the business he was selling, makes no sense and does not comport with the language of the Agreement.

Ferguson's argument that the term "affiliates," which he also agreed to indemnify,  did not included Intermountain, lacks merit.  As stated by the Florida courts, unless the document in question contains a glossary of terms requiring a different meaning, a court should look to the dictionary to determine the plain and ordinary meaning of words.  *Beans v. Chohonis,* 740 So.2d 65, 67 n.3 (Fla. Dist. Ct. App. 1999); *see also Winn-Dixie Stores, Inc. v. 99 Cent Stuff-Trial Plaza, LLC.,* 811 So.2d 719, 722 (Fla. Dist. Ct. App. 2002) ("Unless the document in question contains a glossary of terms requiring a different meaning . . . to find the plain and ordinary meaning of words, one looks to the dictionary.") Since the term "affiliates" is not defined in the Agreement, the Court would look to the dictionary to determine the plain and ordinary meaning of the term.  Black's Law Dictionary defines "affiliate" as "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."  Black's Law Dictionary (7th ed. 1999).

Gale bought all of the outstanding shares of Intermountain and thereafter Intermountain became a wholly owned subsidiary/affiliate of Gale.  Giving the words of the Agreement their plain meaning, Ferguson therefore agreed to indemnify Gale for any claims later brought against Gale for work previously done by Ferguson/Intermountain.

**B.**      **Ferguson's misrepresentation claims brought against Gale.**

In Count V of the complaint, Ferguson asserts that Gale made false representations about future insurance coverage for Intermountain after the sale which Ferguson alleges were material and that Gale knew Ferguson would rely on the representations in completing the transaction. Based on the following discussion, Gale's motion for summary judgment as to Count V will be granted.

Ferguson testified that Debby Kelly, on behalf of Gale, told him that Gale would have insurance coverage for Intermountain after the sale that would be at least as extensive as when Ferguson had owned the business. Gale's defense to this claim is simple: there was no misrepresentation.

The record is clear that Gale did maintain insurance for Intermountain after the closing. They just switched insurance carriers. Ferguson suggests that if his old insurance policy had not been cancelled, then this would have in some manner cancelled out the defend and indemnity portion of the Agreement. Thus, Ferguson argues, that he has lost the benefit of some insurance coverage that he might otherwise have had if the policy had not been cancelled, but Ferguson's argument is not supported by the record.

Assuming the sale had never taken place and Ferguson still owned Intermountain when the fire occurred at New Horizon, it is true that the old insurance company would have paid the claim. Ferguson would not have to repay his own insurance company for that loss. From this, Ferguson posits that he should not have to pay Gale because Gale made the decision after the sale to change insurance companies.

**Memorandum Decision and Order - Page 9**

However, what Ferguson is overlooking is that, in this case, he voluntarily entered into the Agreement that established different relationships than that described above.  He has confused insurance Intermountain had to protect itself from third party claims with his legal obligation to indemnify Intermountain for any claim made against them.  These are separate matters.  Under the Agreement, Gale was not required to file an insurance claim as a condition to asserting its indemnification rights under ¶  4.1 of the Agreement.   Because of the "fronting" insurance policy that Gale had, it is understandable why they did not want pursue a claim under its policy, since any amount the insurance company paid would be billed to Gale as a "premium," the net result being that Gale would be paying for the  negligence of  Ferguson's employees while he owned the company over and above the $3 million it had paid to buy the company.

Under both Florida and Idaho law, an essential element of a fraud claim is a knowingly false statement made by the defendant.  *Cohen v. Kravit Estate Buyers, Inc.,* 843 So.2d 989 (Fla. Dist. Ct. App.2003); *Aspiazu v. Mortimer,* 139 Idaho 548, 550, 82 P.3d 830, 832 (2003). Ferguson has failed to establish that the statement was false when allegedly made.  Based on this finding, the Court does not need to discuss Gale's other argument based on merger of any oral statements into the Agreement.

**C.**     **Breach of contract and covenant of good faith and fair dealing based on the withholding of payments to Ferguson.**

In Count II of the complaint, Ferguson alleges that, even if he was obligated to indemnify Gale with respect to the New Horizon claim, Gale breached the Agreement by withholding payments from him in an amount that exceeded any anticipated liability for the New Horizon fire.  Count IV of the Complaint alleges that Gale breached the covenant of good faith and fair

dealing that is implied in every contract by withholding far money than was reasonably necessary to settle the New Horizon claim.

At the time this case was filed, Gale was withholding approximately $900,000 in future payments to Ferguson to cover the New Horizon claim. Ultimately, Ferguson was able to settle the New Horizon claim for $210,000, which Gale paid out of the money it was withholding from Ferguson. The balance of the withheld funds was later paid to Ferguson, but there may still be some dispute as to whether Gale still owes some back payments and/or whether Ferguson received interest on the funds that were withheld and later paid to him.

Gale seeks summary judgment on both of these counts on the grounds that no material issue of fact exists and it is entitled to judgment as a matter of law. For the reasons expressed below, the motion will be denied.

Paragraph 4.4 of the Agreement provides that Gale is entitled to withhold payments payable to Ferguson to the extent it was entitled to indemnification:

> In addition to any other remedies available to Gale hereunder or otherwise, to the extent that Gale is entitled to be indemnified by either of the Stockholder [sic] pursuant to Section 4.1 above for any Loss or has any monetary claim (whether or not contingent on [sic] unmatured) against the Stockholder, Gale shall have the right to withhold payments payable to the Stockholder or offset any Loss for monetary claim against any amount payable by Gale to the Stockholder pursuant to this Agreement or otherwise.

Implicit in this paragraph legally is a covenant of good faith and fair dealing. Under Florida law, a covenant of good faith is implied in every contract. A claim for breach of the covenant, however, is not independent of a claim for breach of contract. The covenant protects the reasonable expectations of the parties in light of their express agreement and a breach of the

**Memorandum Decision and Order - Page 11**

covenant is fundamentally a breach of contract claim.  *See Ins. Concepts & Design, Inc. v. Healthplan  Servs., Inc.,* 785 So.2d 1232, 1234-35 (Fla. Dist. Ct. App. 2001).

Gale suggests that because it had a contractual right to indemnification, it could withhold all payments to Ferguson, no matter how big or small the claim against it may be.   While the Court agrees that Gale may withhold future payments, Gale does not have unfettered discretion as to the amount to choose to withhold.  Gale must conduct itself in a reasonable manner when exercising its right to withhold future payments pursuant to ¶ 4.4 so as not to materially breach the contractual provisions.  In this case, too many issues of disputed fact exist as to whether Gale acted in a reasonable manner in exercising its rights under the contract.  The Agreement is silent as to the gross amount of payments that Gale could withhold to cover a contingent liability. Because the Agreement fails to define the standards for exercising such discretion, the implied duty protects the contracting  parties' reasonable commercial expectations.  *See Publix v. Wilder Corp. Of Delaware,* 876 So.2d 652, 654  (Fla. Dist. Ct. App. 2004).

Ferguson asserts that the facts will show that Gale breached this implied duty and that it did not act in a reasonable commercial manner.  On December 15, 1999, Gale referred the claim to the claim department of its parent company, Masco.  New Horizon's insurance carrier initially advised Masco that the subrogation claim would be in excess of $500,000.  Later, the Boise Fire Department indicated that the damages from the fire would be approximately $825,000. According to Ferguson, Gale relied on the $825,000 figure from the Fire Department and never conducted any independent investigation of the estimated loss, or of the $500,000 subrogation amount as determined by the insurance company[3].

---

[3]     Correspondence from Masco to Plaintiff's attorney stated that Gale had retained Safety Engineering Laboratories to investigate the claim.

**Memorandum Decision and Order - Page 12**

However, relying on internal documents from Masco's claim department, Ferguson argues that by April, 2000, Masco and Gale had both determined that the potential liability would only be in the range of $210,000.   Ferguson argues that  withholding more than four times the amount of the April, 2000, estimate for a period of more than two years was not commercially reasonable and was in bad faith.

At a trial, Gale may be able to persuade a jury that its actions were reasonable based on the information it had available at the time it made its decision, that there was no material breach of the contract, and that its actions did not violate the covenant of good faith and fair dealing. Ferguson is certainly free to argue to the contrary.  One elusive factor that has not been fully developed at this stage is, assuming Ferguson can establish that Gale withheld more money than it should have under these circumstances, what would his damages be if, as the record suggests, Gale has made up all of the delinquent payments, including interest?

## IV.
## Motion to Strike.

Gale has moved to strike the affidavit of Reisse L. Perin, the Plaintiff's damage expert. Gale argues that Perin's affidavit differs in two material respects from the expert report provided earlier and Perin's deposition testimony.  Much of the discussion has to do with whether Perin was entitled to use  as an item of damage the $210,000 the Ferguson asserts should not have been withheld from him to pay the New Horizon claim, substituting for an earlier opinion  relying on an earn out agreement using as a floor $233,722 .

At oral argument, Ferguson argued that the opinion has not changed, and counsel indicated that they thought they could work the matter out.  In any event, given that the Court

**Memorandum Decision and Order - Page 13**

has now ruled that Gale was entitled to be indemnified by Ferguson,  Perin can no longer legally rely on that amount as part of his damage calculation.

Based on representations by counsel, the motion will be deemed  withdrawn without prejudice.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Defendant-Counterclaimant's motion for summary judgment (docket # 31) filed on October 29, 2004, is GRANTED IN PART and DENIED IN PART as follows:

A)      The motion is GRANTED as to count V of the complaint and count I of the counterclaim.

B)      The motion is DENIED as to counts II and IV of the complaint.

2)      Plaintiff-Counterdefendant's motion for summary judgment (docket # 36) filed November 1, 2004, is DENIED as to counts I and VIII of the complaint.  Plaintiff voluntarily dismissed counts III, VI, and VII of the complaint.

3)      Defendant-Counterclaimant's motion to strike the affidavit of Reisse Perin (docket # 44) filed December 9, 2004, is deemed to be WITHDRAWN.

**DATED:  July 1, 2005**

**Honorable Mikel H. Williams**
**United States Magistrate Judge**

**Memorandum Decision and Order - Page 14**